UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| WILLIAM C. ANDREWS, | * | CIV 21-5044 |
| | * | CR 18-50045 |
| Movant, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

William C. Andrews ("Andrews") filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Andrews alleges that he received ineffective assistance of counsel during his 2018 trial where he was found guilty of possession of a firearm by a prohibited person. The United States filed a motion to dismiss Andrews's petition as untimely and for failing to state a claim. (Doc. 11.) Andrews filed a response to the motion, arguing that the one-year statute of limitations for filing a § 2255 motion should be equitably tolled in his case due to the COVID-19 pandemic. (Doc. 18.)

**BACKGROUND**

Andrews proceeded to a trial after he was indicted for one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On July 26, 2018, the jury convicted Andrews. (CR 18-50045, Doc. 55.) He was sentenced to 42 months in prison with 36 months of supervised release to follow. (*Id.*, Doc. 82.) The Eighth Circuit affirmed Andrews's conviction on July 3, 2019 (*id.*, Doc. 97), and denied his petition for rehearing on August 23, 2019. (*Id.*, Doc. 100.) Andrews filed his pro se motion pursuant to 28 U.S.C. § 2255 on July 23, 2021, more than one year after his judgment of conviction became final. In his motion, he asserted that he was unable to timely file the motion because he "was in transport from 6-1-2020 to 2-1-2021 and did not have access to any legal paper work." (Doc. 1, p. 4.) In addition, he said the COVID-19 pandemic and the resulting "nation wide shut downs," kept him from accessing the law library or contacting his lawyer. (*Id.*)

Noting that the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is subject to equitable tolling in exceptional circumstances, this Court directed the United States to address whether equitable tolling is appropriate in this case. (Doc. 3 at 3.) The government responded with a motion to dismiss (Doc. 11), and argued against equitable tolling. (Doc. 12.) Andrews submitted a response to the government's arguments. (Doc. 18).

## DISCUSSION

### A. Section 2255 Statute of Limitations

Section 2255 motions are subject to a one-year statute of limitations, running from the latest of

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

### B. Date on Which Judgment of Conviction Became Final

Andrews did not appeal the Eighth Circuit's decision by filing a petition for certiorari with the Supreme Court. When a judgment of conviction is appealed and affirmed, and a petition for certiorari is not filed, the judgment becomes final when the time expires for filing a petition for certiorari. *See Clay v. United States*, 537 U.S. 522, 525 (2003). The time to file a petition for a writ of certiorari runs from the date that the petition for rehearing was denied. S. Ct. R. 13.3. After the Eighth Circuit denied rehearing on August 23, 2019, Andrews had 90 days in which to petition for certiorari from the Supreme Court. S. Ct. R. 13.1 (stating that a petition for a writ of certiorari to review a judgment entered by a United States court of appeals must be filed within 90 days after entry of the judgment). Andrews's conviction therefore became final on November 21, 2019 (i.e.,

2

90 days after August 23, 2019). Pursuant to § 2255(f)(1), Andrews had one year, until November 22, 2020, to file his § 2255 motion. He did not file the motion until July 23, 2021 - - eight months too late. Accordingly, under § 2255(f)(1), Andrews's § 2255 motion is untimely.

## C. Equitable Tolling

The Eighth Circuit has held that the one-year limitations period for § 2255 motions may be equitably tolled where " 'extraordinary circumstances' beyond a prisoner's control prevent timely filing." *United States v. Martin*, 408 F.3d 1089, 1092–93 (8th Cir. 2005). For equitable tolling to apply, a prisoner must show that: (1) extraordinary circumstances prevented him from timely filing; and (2) he was diligent in pursuing the § 2255 motion. *Id.* at 1093–95. Equitable tolling is an "exceedingly narrow window for relief." *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005) (quoting *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001)). Application of equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Jihad*, 267 F.3d at 806 (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

In his response, Andrews admits he was housed in the South Dakota State Penitentiary on state felony convictions from November of 2018 until August 25, 2020, at which time he contends that he received parole on his state sentences and was transferred to federal custody. (Doc. 18.) Though he began serving his federal sentence on August 25, 2020, Andrews asserts that he remained at the state prison until October, 2020 when he was transferred to a federal holding facility in Oklahoma. (*Id.* at 2.) He was placed in FCI Florence on November 10, 2020 where he was in quarantine until December 15, 2020.

Andrews says that he "mailed out" his legal paperwork in June of 2020 because he was under the impression he would become a federal inmate at that time, and he was told he would not be able to take the paperwork with him when he was transferred.[1] (Doc. 18 at 1.) He describes his legal paperwork as including a § 2255 form, and transcripts of his pretrial, trial and sentencing. He states

---

[1] Andrews says that he received parole on one state sentence in June of 2020 and thought that he would be transferred to federal custody at that time, but in fact he had to wait until he received parole on a second state felony conviction, which occurred on August 25, 2020. (Doc. 18 at 1-2.) He says that he remained at the state prison until October of 2020, even though he had started serving his federal sentence by that time.

3

that "this legal work had all my dates and everything I would need to file my 2255." (*Id.*) Andrews doesn't mention where he sent his legal paperwork.

Andrews argues that, due to the COVID-19 pandemic and related shut-downs after he arrived at FCI Florence, he was not able to access the law library, his legal papers, and could not contact his lawyer. His requests for "addresses, phone numbers to the Clerk of Courts or to get my records was not answered. I did not have my case #, I did not have access to my transcripts or my legal paperwork to help me file my 2255. I didn't even have a 2255 form." (Doc. 18 at 2-3.) Andrews explains that he did not want to try to make arguments about ineffective assistance of counsel from memory because his trial took place over three years ago and the transcripts would help him "have the words exactly and be able to write my appeals based off of facts and not memory." (Doc. 18 at 4-5.) Andrews says he is not blaming his untimely motion on the prison. Rather, he attributes the untimeliness to the COVID-19 pandemic. "It is the unexpected circumstances that everyone is facing that makes it difficult to get business done. Lock Downs result in limited phone access, law library or even staff to help get case information. All this is evidence of extraordinary circumstances beyond my control." (Doc. 18 at 5.)

The United States submitted the Declaration of Kimberly Gempler, a prison unit manager at FCI Florence (Doc. 12-1.) Gempler states that records from the Bureau of Prisons ("BOP") show that Andrews was admitted to an in-transit facility on September 9, 2020, where he remained until his arrival at FCI Florence on November 10, 2020. He remained in quarantine until December 15, 2020 due to a positive COVID test. Gempler admits that Andrews would not have had access to his personal property during quarantine from November 10 to December 15, 2020, but contends that he would have had access to personal property following his quarantine. She also admits that there were many lockdowns after Andrews arrived due to a significant COVID-19 outbreak. Gempler agrees that Andrews has not had access to the Electronic Law Library ("ELL") since he arrived at FCI Florence. She explains that, due to lockdowns, the housing units remained email access only, and inmates had to go to Education to access ELL. Regarding access to ELL, Gempler states:

> The procedure to request to go to Education includes the inmate contacting his Correctional Counselor. In order to receive access to the ELL, the inmate had to provide case information that indicated he had an imminent deadline. If the Counselor was unsure whether the inmate should receive priority access, they would contact Legal Services and Legal would look up the docket and let them know of any

4

deadlines. . . . During the height of our outbreak, Legal Services looked up many cases for unit team to determine need for access to the ELL.

(Doc. 12-1 at ¶¶ 5, 6.)

Courts have held that prison lockdown measures imposed as a result of the COVID-19 pandemic do not automatically warrant equitable tolling, particularly where the prisoner had not diligently pursued his § 2255 prior to the lockdown. *See, e.g., United States v. Lionel Thomas*, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020); *see also United States v. Barnes*, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he diligently pursued his claims). Further, the Eighth Circuit has rejected the argument that inadequate access to a library amounts to exceptional circumstances permitting equitable tolling. *Baker v. Norris*, 321 F.3d 769, 771 (8th Cir. 2003). In addition, "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).

The main problem with Andrews's arguments in favor of equitable tolling is that his Judgment became final on November 22, 2019, and he admittedly possessed a form to file a § 2255 motion, and all of his transcripts, until he voluntarily mailed those documents somewhere in June of 2020, when he thought he would be transferred to federal prison. Having his legal papers with him until June of 2020 gave him about seven months to file his § 2255 motion after his Judgment became final on November 21, 2019, while he possessed the documents he says that he needed. Andrews does not claim to have had any problems with access to a law library or anything else while he was in state prison, so there is no explanation why he was unable to present his claims in the approximately seven months between November 21, 2019 when his Judgment became final and June of 2020 when he mailed out his legal papers. Andrews does not explain why he didn't go ahead and file the § 2255 form with the Clerk instead of mailing it somewhere else. Furthermore, the pandemic did not manifest in the United States until mid-March, 2020, so Andrews had about four months to file his § 2255 after his Judgment became final and before any pandemic-related problems could have started. But again, Andrews does not allege that he encountered any obstacles to filing a motion even after the pandemic began, while he was housed at the state prison.

5

In his response, Andrews submitted copies of requests he made to allow him access to the prison law library at FCI Florence. The requests are dated January 11, 2021, April 26, 2021, and October 4, 2021. (Doc. 18-1.) He alleges that these requests were not granted and that there are other requests that have not been answered or returned. According to Andrews, "This is proof that I have been trying all year to file these appeals." (Doc. 18 at 5.) However, by January 11, 2021 and April 26, 2021, the November 22, 2020 deadline to file his § 2255 had already passed. Andrews's request to access the law library on October 4, 2021 was made after he had already filed his § 2255 motion on July 23, 2021. Therefore these requests for access to the law library do not support equitable tolling of the one-year statute of limitations.

It is true that Andrews was in transit from September or October 2020 until he arrived at FCI Florence on November 10, 2020, and that he was in quarantine until December 15, 2020. However, other courts have found that prison transfers and any resulting lack of access to legal materials or to the law library are not sufficient to justify equitable tolling of the statute of limitations. *Pepper v. United States*, 2013 WL 5770357, at *2 (W.D. Mo. Oct. 24, 2013) (collecting cases). This authority is particularly persuasive when Andrews admits he had possession of the information he needed to timely file his motion for about seven months during the one-year statute of limitations. He admits that "this legal work had all my dates and everything I would need to file my 2255." The fact that the information supporting his ineffective assistance of counsel claims was known to Andrews well before the expiration of the limitations period indicates that he failed to exercise reasonable diligence in pursuing his § 2255. Andrews does not explain to whom he mailed the legal papers, why the papers were not returned to him, or why he waited until July 23, 2021 to prepare and file his § 2255 motion. This is troubling because he knew how to contact this Court well before July of 2021. He sent at letter dated January 22, 2021 to this Court at the correct address for the federal courthouse in Sioux Falls, asking this Court to give him credit for time served on his state sentence. (CR 18-50045, Doc. 107.) Andrews sent this letter six months before he filed his § 2255 on July 23, 2021.

The COVID-19 pandemic does not automatically warrant equitable tolling of the AEDPA's one-year statute of limitations. The movant must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion. Andrews failed

to show that the pandemic or any other extraordinary circumstances beyond his control prevented him from timely filing his motion, and that he was diligent in pursuing his claims.

## D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This Court concludes that the basis for dismissal in this case is not reasonably debatable, and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Slack*, 529 U.S. at 484–85. Accordingly,

## IT IS ORDERED:

(1)   That the United States's Motion to Dismiss (Doc. 11) is granted;

(2)   That William Andrews's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 1) is dismissed; and

(3)   That a Certificate of Appealability is denied.

Dated this 9th day of February, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

7